## No. 21967.

UNITED FIRE & CASUALTY COMPANY, A CORPORATION *v.*
NISSAN MOTOR CORPORATION IN U.S.A., A CORPORATION.
(433 P.2d 769)

Decided October 9, 1967.     Opinion modified and as modified adhered
to and rehearing denied December 4, 1967.

Yegge, Hall, Treece and Evans, Roland E. Gebert, for plaintiff in error.

Lee, Bryans, Kelly & Stansfield, Fletcher Thomas, for defendant in error.

*In Department.*

Opinion by Mr. Justice Sutton.

Nissan Motor Corporation, an importer and distributor of Datsun automobiles, is a California company qualified to do business in Colorado. It brought suit against Clyde R. McKnight, a former Denver Datsun automobile dealer and United Fire and Casualty Co. as surety for McKnight. The record discloses that United had issued McKnight three surety bonds each in the amount of $5,000 which bonds were in effect during the period in question from January 13, 1961 to June 30, 1963. These bonds indemnified all persons, firms, and corporations dealing with McKnight against any loss suffered by reason of his fraud, fraudulent representations or violations of the provisions of C.R.S. '53, 13-11 — the latter section being entitled "Right of action for loss by fraud-process." The bonds also ensured payment of any judgment obtained against McKnight for such acts or violations. The surety appeared by counsel who also filed an answer on behalf of McKnight.

Nissan's complaint alleged that McKnight had been

appointed its agent and dealer for the Denver area for the sale of Datsun automobiles; that he had made repeated false representations to Nissan to induce it to deliver automobiles and parts to him on credit; and that many of these automobiles and parts were never paid for. Damage was sought in the amount of $15,330.88. Nissan additionally claimed recovery against United on the surety bonds in the full amount of $5,000 for each bond period. Following trial to the court, judgment entered in favor of Nissan against McKnight in the amount of $12,780.88 plus costs and against United in the amount of $15,000 plus costs.

Although United, as the sole appellant, urges several grounds for reversal, we deem the crucial issue in the case to be whether there is evidence to support the trial court's oral finding that a fiduciary relationship existed between McKnight and Nissan, and that McKnight was guilty of constructive fraud.

We shall first consider the nature of the relationship between Nissan and McKnight and then we shall consider the issue of fraud.

██ A reading of this record convinces us that no fiduciary relationship existed here. For example, McKnight was not actually Nissan's agent in a legal sense. He purchased the automobiles and parts from the former and sold them as *he* desired, apparently without any control from Nissan as to his actions. Also no prior business agency, no professional or confidential relationship and no family ties were shown which might have impelled or induced Nissan to relax the care and vigilance it would and should have ordinarily exercised in dealing with a stranger. Cf., *In re McDonnell's Estate*, 65 Ariz. 248, 179 P.2d 238 (1947) and 37 C.J.S. *Fraud* § 2. The fact that Hoen, who was Nissan's general manager, testified that he "trusted" McKnight because they belonged to the same fraternal lodge, also did not create any such relationship. A confidential relationship has been defined as one "* * * between two persons when it

is established that one occupies a superior position over the other — intellectually, physically, governmentally or · morally — with the opportunity to use that superiority to the other's disadvantage." *Union Trust Company of New Castle v. Cwynar,* 388 Pa. 644, 131 A.2d 133 (1957). Obviously that is not the situation here where Nissan, if anything, was the dominant party.

■ As to the question of fraud, the trial court's find-. ings were that there was constructive fraud under the facts presented. Again we do not agree. We find in this record no evidence of any actionable fraud. Hoen claimed that he relied on McKnight's representation that the latter would in the future inherit money that he would invest in the dealership. We note that this representation was first made prior to the creation of any automobile distributorship. No showing appears here though that Nissan had any right to rely on what McKnight said *prior* to the creation of the distributorship.

■ It is true that Hoen testified that credit was first granted and then continued and enlarged due to the allegedly fraudulent representation as to the inheritance. That representation, however, related to *future* events. An essential element of fraud is that the misrepresentation relied on must be of an *existing* or *past material fact. Zimmerman v. Loose,* 162 Colo. 80, 425 P.2d 803 (1967); *Leece v. Griffin,* 150 Colo. 132, 371 P.2d 264 (1962); *Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458 (1937).

As to the additional representation made in January 1962, when McKnight told Hoen that his brother would receive a settlement arising out of a personal injury claim which sum would be invested in the business, we note that this appears to have been true at the time it was made. In any event, Hoen did not rely on this particular representation as made by McKnight, for he personally checked out the possibility of the brother's settlement to his own satisfaction.

■ In our view, the representations in question fall

46

short of constituting actionable fraud, constructive or otherwise. Since the loss sustained by Nissan did not arise out of any actionable representation by McKnight, and no violations were shown of C.R.S. '53, 13-11-11, which were the proximate cause of any loss to Nissan, the judgment against United, as McKnight's bonding company, must be reversed and the cause remanded with directions to the trial court to dismiss the complaint against United only.

It is so ordered.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McWILLIAMS, and MR. JUSTICE KELLEY concur.

\* \* \*

On Petition For Rehearing en banc, opinion modified, and as modified adhered to and the Petition denied. Mr. Justice McWilliams states that he would grant the Petition.