**PIONEER REAL ESTATE, INC.,**
Plaintiff–Appellee,

v.

**Heini LARESE, a/k/a Heinrich Larese, Defendant.**

**LAND TITLE GUARANTEE CO., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF the TREASURY, INTERNAL REVENUE SERVICE, Defendant–Appellant,**

and

**Pioneer Real Estate, Inc., Arthur Odell, Carl Gray, Victor Kinnonen and Heini Larese, Defendants.**

No. 85CA1682.

Colorado Court of Appeals,
Div. I.

May 5, 1988.

Rehearing Denied May 26, 1988.

Certiorari Denied Oct. 11, 1988.

Kelly, Haglund, Garnsey & Kahn, Norman D. Haglund Denver, for plaintiff-appellee.

Roger M. Olsen, William L. Paup, William S. Estabrook, Thomas R. Lamons, Asst. U.S. Attys., Washington, D.C., for defendant-appellant.

HUME, Judge.

In this interpleader action concerning the proceeds from the sale of Heinrich Larese's real property, defendant, United States of America (the government), appeals the judgment entered in favor of plaintiff (broker). We reverse.

On August 24, 1982, broker and Larese entered into a standard form exclusive listing contract concerning Larese's real property. That contract provided that broker was entitled to a sales commission of six percent of the purchase price, in the event the property was sold by anyone during the listing period. On April 20, 1983, during the listing period, Larese sold the property without informing broker.

After broker learned of the sale, it brought an action against Larese to recover its commission under the listing contract ($24,900, representing 6% of the $415,000 sale proceeds).

Broker sought and obtained a pre-judgment writ of attachment on the grounds that Larese was about to remove his assets from Colorado with intent to defraud, delay, or hinder his creditors. On May 5, 1983, broker served a writ of garnishment in aid of attachment upon Land Title Guarantee Company (Land Title), the closing agent for the April 20, 1983, sale. Although Land Title was then in possession of substantially all proceeds of the sale, it subsequently disbursed all of them except

for $27,000 which it held pursuant to the writ of garnishment.

Before broker's claim came to trial, the Internal Revenue Service (IRS) initiated civil remedies against Larese in order to collect a 100% responsible officer penalty in the amount of $25,531. On March 15, 1984, the IRS made an "assessment" of taxes, initiating the creation of a tax lien covering all of the taxpayer's property pursuant to 26 U.S.C. § 6321 (1982).

Thereafter, trial on the merits of broker's claim against Larese was held. On July 31, 1984, the trial court entered judgment in favor of broker and against Larese for $24,900, plus statutory 8% pre-judgment interest from April 20, 1983.

In October 1984, Land Title, being subject to both the garnishment writ and the government's notice of tax lien, deposited the disputed $27,000 into the court's registry account and commenced this interpleader action.

The trial court held that the federal tax lien was invalid, or in the alternative, held that even if the federal lien was valid, it did not attach to the proceeds from the sale because Larese held the proceeds in constructive trust for broker.

## I.

■ Broker correctly concedes that its attachment lien, in and of itself, is not considered sufficiently "choate" to prevail over a properly perfected federal tax lien. *See United States v. Security Trust & Savings Bank*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950). However, broker argued and the trial court held that no valid prior federal tax lien had been established because the government failed to prove that it mailed a notice and demand for payment of tax, which 26 U.S.C. § 6303(a) (1982) requires.

## A.

■ Here, the government first urges that broker lacked standing to challenge the validity of the tax lien. We disagree.

A federal tax lien attaches to a taxpayer's property pursuant to 26 U.S.C. § 6321 (1982). That section provides:

"If any person liable to pay any tax neglects or refuses to pay the same *after demand,* the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." (emphasis added)

Thus, the IRS must make a demand for payment before a lien is created in favor of the government. *United States v. Coson,* 286 F.2d 453 (9th Cir.1961); *Viva Ltd. v. United States,* 490 F.Supp. 1002 (D.Colo. 1980). The Internal Revenue Code requires a two-step process in order to establish a tax lien. IRS must first make an assessment of the taxes due, and must then give notice of assessment and demand to the taxpayer.

To satisfy the first step, an IRS district director is authorized to make "an assessment of taxes due" by recording the taxpayer's liability in official records maintained in his office. 26 U.S.C. § 6201 (1982).

■ The second step requires that, within 60 days after making the assessment, the IRS "shall ... give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof." 26 U.S.C. § 6303 (1982). We conclude that, because the existence of the tax lien is contingent upon the IRS's compliance with the notice requirements, a competing creditor has standing to contest whether the government demanded payment from the taxpayer.

■ The plain language of 26 U.S.C. § 6321 (1982) states that "after demand" a lien arises. We decline to interpret this provision as stating that "after demand" a lien arises as to the taxpayer but as to all other competing creditors a lien arises merely "after assessment." Although under 26 U.S.C. § 6322 (1982), a tax lien's effective date relates back from the date of notice and demand to the date of assessment, failure to give notice is fatal to creation of the lien, notwithstanding proper

assessment. *See Viva Ltd. v. United States, supra.*

### B.

▇ The government argues that the trial court's finding and conclusion that the government's proof was insufficient to show that it sent the required notice and demand to the taxpayer is erroneous and not supported by the record. We agree.

At trial, the government offered testimony from a revenue agent, who had been assigned to collect the assessment against Larese. He testified, as custodian of the administrative case file, concerning normal administrative practices and procedures in recording information into such files, and the significance of those entries. Although the agent did not personally prepare all of the forms contained in the tax file, his testimony was sufficient to authenticate the documents in the file and to establish a *prima facie* case for administrative compliance with the statute. *See Holland v. United States,* 209 F.2d 516 (10th Cir.1954).

The government offered into evidence a copy of a form notice sent to Larese. Handwritten on the form was the following: "10 day notation marked out mailed 3–15–84." The agent testified that this notation would have been endorsed at the time when the former revenue agent in charge of Larese's file made his assessment and mailed it to Larese.

The government also offered into evidence a certified copy of the Certificate of Assessments and Payments (Form 4340) relating to Larese's liability. This form states that "Delinquent notice issued" on March 15, 1984. The agent testified that "notice issued" would refer to the date the notice was physically delivered or mailed to the taxpayer.

The trial court admitted into evidence the agent's testimony, the copy of the form notice, and the Certificate of Assessments and Payments. It made no finding that this evidence was incredible or incompetent, but found that:

"*no evidence was offered* to show that the United States had met the statutory requirement of giving proper notice and demand prior to [July 31, 1984, or August 21, 1984,] if ever.... The Court specifically finds that it is abominable, with all the records available in this and other federal cases, that there is not a simple document such as a certificate of mailing or delivery made part of the taxpayer's file that could be introduced in court as evidence to prove notice and demand was in fact made...." (emphasis added)

We conclude that the trial court erred in making those findings and conclusions in the face of the evidence that was admitted at trial. That evidence was legally sufficient to establish a *prima facie* showing that the government had perfected its lien. *See United States v. Lorson Electric Co.,* 480 F.2d 554 (2d Cir.1973). In the absence of any evidence rebutting the government's *prima facie* case, we hold that the government proved that the required notice was mailed, thus perfecting the government's lien prior to the entry of judgment in favor of broker.

### II.

▇ The government next argues that the trial court erred in imposing a constructive trust on the proceeds of the sale of Larese's property. We agree.

In *United States v. Fontana,* 528 F.Supp. 137 (S.D.N.Y.1981), the court held that a federal tax lien does not attach to property in which the taxpayer only holds title as constructive trustee for another. That court stated:

"A tax lien creates no property rights in itself. *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Federal law merely determines the priority of liens once the federal tax lien attaches. *Id.* But whether the tax lien has attached depends on the state law question of ownership, since the lien can only attach to property that the taxpayer owns. When title to property is bifurcated, so that the taxpayer owns mere legal title and serves as the trustee for the benefit of a third party,

the taxpayer's interest is insufficient for the tax lien to attach."

Under the principles of *Fontana*, the issue is whether the trial court here erred in imposing a constructive trust under Colorado law.

A constructive trust is an equitable device used to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. *In Re Marriage of Allen*, 724 P.2d 651 (Colo.1986). By imposing a constructive trust, a court awards the successful plaintiff a personal order requiring the defendant to transfer specific property to the plaintiff.

Restitution by way of constructive trust may be appropriate for property which has been obtained by fraud, by duress, or by the abuse of a confidential relationship. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). For a constructive trust to arise from the abuse of a confidential relationship, the transferor of property must be justified in his belief that the transferee will act in the interests of the transferor. *Page v. Clark, supra; Ralston Oil & Gas Co. v. July Corp.*, 719 P.2d 334 (Colo.App.1985). To be entitled to a constructive trust, the transferor of property must show a business, agency, professional, familial, or other relationship "which might have impelled or induced the transferor to relax the care and vigilance it ordinarily would have exercised in dealing with a stranger." *United Fire & Casualty Co. v. Nissan Motor Corp.*, 164 Colo. 42, 433 P.2d 769 (1967).

Here, the trial court's finding that Larese abused a confidential relationship when he sold his property to a third party was erroneous. Although Larese and broker had a principal-agent relationship, this relationship was governed by an exclusive listing contract, which provided that the broker would be entitled to its full commission if Larese's property sold during the listing period. After reviewing the record, we conclude this case involved the breach of a listing contract, negotiated and entered between parties dealing at arms length. Broker did not introduce evidence showing that it was impelled or induced by any special relationship existing between itself and Larese to relax its vigilance. Hence, we conclude that there is insufficient evidence to sustain the trial court's finding that a confidential relationship existed.

Moreover, the trial court's imposition of a constructive trust in favor of broker functions to give broker's claim a preference over the government's claim. A court of equity may impose a constructive trust if its only effect is to return property to a plaintiff, but it should deny it on the same basic facts if its effect would work an unwarranted preference over general creditors. *State v. Benjamin*, 41 Colo.App. 520, 587 P.2d 1207 (1978).

In this case, the preference is especially unwarranted because broker's claim against Larese cannot be described as restitutionary in any sense. The goal of restitution in a breach of contract situation is the restoration of a benefit conferred. G. Palmer, *The Law of Restitution* § 4.2 (1978). Here, the trial court did not base its award on the benefit broker conferred upon Larese, for the reasonable value of the services it performed. Rather, the court based its award on general damage principles by awarding broker the benefit of its bargain, 6% of the selling price. *See Restatement (Second) of Contracts* § 344 (1979).

The judgment is reversed and the cause is remanded for determination of the amount owing on the tax lien and with instructions that that lien shall have priority over broker's garnishment liens against the funds subject to the interpleader.

PIERCE and CRISWELL, JJ., concur.