Christa G. BOHRER, Plaintiff–Appellee,

v.

Daniel DeHART, First Methodist Church of Greeley, a non-profit Colorado corporation; and Rocky Mountain Conference of the United Methodist Church, a non-profit Colorado corporation, Defendant–Appellants.

Nos. 94CA1058, 94CA1183 and 94CA1200.

Colorado Court of Appeals,
Div. IV.

May 30, 1996.

As Modified on Denial of Rehearing
July 5, 1996.

Certiorari Granted, Judgment Vacated, and Case Remanded by the Supreme Court
to the Court of Appeals
for Reconsideration
Jan. 13, 1997.

Holland, Seelen & Pagliuca, Joyce Seelen, Brian K. Holland, Denver, for Plaintiff–Appellee.

Hibschweiler & Johnson, James D. Johnson, Sheila E. Barthel, Denver, for Defendant–Appellant Daniel DeHart.

Keller, Wahlberg & Morrato, P.C., James J. Morrato, Denver, for Defendant–Appellant First United Methodist Church of Greeley.

Quigley & Bruce, William C. Ritter, Neil Quigley, Denver, for Defendant–Appellant Rocky Mountain Conference of United Methodist Church.

Opinion by Judge BRIGGS.

In this consolidated appeal, defendants Daniel DeHart (DeHart) and Rocky Mountain Conference of the United Methodist Church (Conference) appeal the judgment of the trial court finding them liable to plaintiff, Christa G. Bohrer, on claims arising out of DeHart's sexual abuse of plaintiff while she was a minor. Defendant First United Methodist Church of Greeley (Church), which is a member of the Conference, does not appeal the judgment awarded against it, but appeals the trial court's order imposing on defendants joint and several liability for plaintiff's costs. We affirm the judgment against DeHart determining him to be liable to plaintiff for breach of fiduciary duty, outrageous conduct, and punitive damages; the judgment against the Conference determining it to be liable to plaintiff for negligent hiring and supervision; and the award of costs jointly and severally against all defendants. We reverse the judgment against the Conference determining it to be liable to plaintiff for breach of fiduciary duty and for punitive damages, the compensatory damage awards against DeHart and the Conference, and the punitive damage award against DeHart. Finally, we remand the cause for a new trial to determine the allocation of fault among defendants; the amount of compensatory damages to be awarded against DeHart and the Conference; the amount of punitive damages to be awarded against DeHart; and whether to award punitive damages against the Conference and, if so, the amount of that award.

When plaintiff was a twelve-year-old parishioner at the Church, DeHart, its youth minister, encouraged her to discuss with him any problems she had. Though reluctant at first, she eventually began counseling with him and confided in him about her abusive father, her distant mother, and her thoughts of suicide. DeHart, then twenty-eight years old and married, began to pursue a close relationship with the child involving more than counseling and support for her.

DeHart soon confided in plaintiff about his own personal problems, including his marital difficulties. Over the next two years, hugs during counseling sessions led to other increasingly intimate physical touching.

Shortly after plaintiff turned fourteen, DeHart convinced plaintiff to submit to a sexual relationship with him. According to plaintiff, DeHart told her, among other things, that she was as bad as she believed when she came to him for counseling but that he loved her despite all of her faults; that their sexual relationship was God's will; and that the relationship was proper in the eyes of God because they were spiritual husband and wife.

DeHart and plaintiff's sexual relationship lasted four years. Sexual encounters occurred, among other places, on Church youth trips, in DeHart's car, in the Church building, and in plaintiff's home when her parents were out of town. Plaintiff testified that DeHart told her that, if she ever revealed their relationship, she would "go to hell," that she would be punished for having seduced a minister, and that he would divulge everything she had ever told him about her personal life. Virtually all of the sexual conduct, which plaintiff's testimony indicated was frequent and became increasingly degrading for her, occurred before she turned eighteen.

Plaintiff finally managed to end the relationship the summer before she left for college. The emotional and physical repercussions she had been experiencing nevertheless continued.

After two years of therapy, plaintiff confronted DeHart, hoping he would acknowledge the harm he had caused her. He instead told her he saw nothing wrong with what they had done. She then called and wrote to Conference officials about the relationship, stating she felt she had a moral obligation to see that the same thing did not happen to others. She asked that the Conference keep the information as confidential as possible because she had not yet revealed the relationship to her parents or other members of the congregation.

The following month, Conference officials confronted DeHart with plaintiff's allegations. While he denied any sexual relationship, he agreed to surrender his credentials "under complaint." The Conference accepted the surrender and determined that no

further investigation or hearings were warranted.

Plaintiff also contacted local authorities, which led to criminal charges being filed against DeHart. The charges resulted in a conviction and sentence pursuant to a plea bargain that involved work release on one charge, probation on another, and no immediate restitution. Plaintiff testified that when she expressed her disappointment with the result, the male prosecutor, who had replaced the initial female prosecutor, had explained it wasn't like DeHart had stolen anything from her, like a horse.

Dissatisfied with the actions taken, plaintiff sued DeHart, the Church, and the Conference. The jury awarded plaintiff $187,500 compensatory damages against DeHart on claims of breach of fiduciary duty and outrageous conduct and an equal amount in punitive damages. It awarded her $37,500 compensatory damages against the Church on claims of negligent hiring and supervision and breach of fiduciary duty. Finally, the jury awarded plaintiff $150,000 compensatory damages against the Conference on claims of negligent hiring and supervision and breach of fiduciary duty and an equal amount in punitive damages.

## I.

DeHart contends that the trial court erred in denying his motions for summary judgment and directed verdict on plaintiff's claim of outrageous conduct and that, even if the claim were properly permitted, the trial court erred in its instructions regarding the claim. We find no error in the submission of the claim or the instructions concerning it.

### A.

DeHart first asserts that the claim against him for outrageous conduct was based on conduct amounting to assault and battery. He argues that, because the statute of limitations on a claim for assault and battery had run, plaintiff's claim for outrageous conduct was barred or, if not barred, could not include consideration of conduct amounting to assault and battery. We do not agree.

The elements of a claim for outrageous conduct differ from those for a claim of assault and battery. The elements of assault are that: (1) the defendant acted either with the intent of making a contact with the person of the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact; (2) the plaintiff was placed in apprehension of an imminent contact with his or her person by the conduct of the defendant; and (3) such contact was or appeared to be harmful or offensive. *CJI–Civ.3d* 20:1 (1989). The elements of battery are similar, except that the contact must have actually resulted. *See CJI–Civ.3d* 20:5 (1989).

In contrast, to succeed on a claim for outrageous conduct, a plaintiff must prove by a preponderance of the evidence that the defendant, by conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, intentionally caused severe emotional distress. *See Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970).

Depending on the facts of the case, a claim for outrageous conduct may overlap with a claim for assault and battery. The claims may coexist or either claim may exist without the other. Hence, in this case, even if the statute of limitations on an assault and battery claim had run, plaintiff still had the right to sue on the separate and still viable claim of outrageous conduct and to have the jury consider all of DeHart's conduct, including that constituting assault and battery. *See Winkler v. Rocky Mountain Conference of United Methodist Church,* 923 P.2d 152 (Colo.App.1995); *Enright v. Groves,* 39 Colo. App. 39, 560 P.2d 851 (1977).

### B.

DeHart asserts that plaintiff portrayed his conduct as sexual battery throughout the course of voluminous discovery and in pre-trial motions. He argues that plaintiff was therefore precluded by the doctrine of judicial estoppel from pursuing and presenting to the jury claims for outrageous conduct

and breach of fiduciary duty. We again disagree.

The doctrine of judicial estoppel applies only when there has been judicial acceptance of a contradictory position by a party in an earlier proceeding. *See Lyons Savings & Loan Ass'n v. Dire's Lock & Key Co.,* 885 P.2d 345 (Colo.App.1994). DeHart has made no such assertion, and the record reveals no such judicial ruling.

### II.

DeHart contends that for several reasons the trial court erred in submitting to the jury the claim against him for breach of fiduciary duty. We again disagree.

### A.

■ DeHart asserts, in an argument similar to that presented regarding the outrageous conduct claim, that conduct amounting to assault and battery is not actionable by a claim for breach of fiduciary duty. We reject the contention for similar reasons. *See Destefano v. Grabrian,* 763 P.2d 275 (Colo.1988); *Winkler v. Rocky Mountain Conference of United Methodist Church, supra; DeBose v. Bear Valley Church of Christ,* 890 P.2d 214 (Colo.App.1994) (*cert. granted* June 19, 1995).

### B.

■ DeHart next asserts that he could not breach any fiduciary duty to plaintiff because a fiduciary duty arises only when one exerts control over the financial affairs of another. However, in *Moses v. Diocese of Colorado,* 863 P.2d 310 (Colo.1993), the supreme court held that the clergy-parishioner relationship may be fiduciary in nature; that one of the fiduciary's duties is to act with utmost good faith and solely or primarily for the benefit of the dependent party; and that the existence of such a relationship is a question of fact for the jury. The holding in *Moses* is dispositive of DeHart's assertion.

### C.

■ DeHart finally asserts in regard to the claim of breach of fiduciary duty that the trial court erred in refusing to instruct the jury that only conduct occurring during the pastoral counseling relationship was actionable. He relies on the fact that in 1985 he resigned as a minister at the Church to pursue academic studies. We conclude that the trial court correctly refused the instruction.

DeHart's argument ignores that he continued to be involved in the youth programs at the Church after his resignation as a minister with the Church and that the jury could conclude from the evidence presented that DeHart never formally terminated the counseling relationship with plaintiff. More importantly, the argument improperly assumes that any duty an adult counselor has to avoid harming a child being counseled necessarily ends immediately when formal counseling ceases.

The supreme court in *Moses* recognized that a parishioner may develop a deep emotional dependence on his or her minister. The intensity of the emotions results in part from the process of "transference and is a typical reaction characterized by a patient unconsciously attributing repressed feelings to the counselor. Transference is one of the most significant concepts in therapy." *Moses v. Diocese of Colorado, supra,* at 328.

As one expert further explained in this case, that dependence leaves the parishioner vulnerable to manipulation because of the resulting "power imbalance." The person in the position of trust can maintain or increase the power imbalance within the distorted reality of the "closed setting" that has evolved and thus continue to take advantage of the parishioner's vulnerability beyond the formal counseling relationship.

DeHart's argument, in effect, is that his own continuing conduct after any formal counseling relationship ended was the legal equivalent of an intervening cause of at least part of plaintiff's damages. That argument cannot succeed when the continuing conduct results from a continuation of the power imbalance created in the fiduciary relationship, and the harm is reasonably foreseeable. *See generally* W. Prosser & R. Keeton, *Prosser and Keeton on Torts* § 44 at 301, 303 (5th ed. 1984) ("On its face, the problem is one of whether the defendant is to be held liable for

an injury to which the defendant has in fact made a substantial contribution, when it is brought about by a later cause of independent origin, for which the defendant is not responsible. In its essence, however, it becomes again a question of the extent of the defendant's original obligation; and once more the problem is not primarily one of causation at all, since it does not arise until cause in fact is established. It is rather one of the policy as to imposing legal responsibility.... In all of these cases there is an intervening cause combining with the defendant's conduct to produce the result, and in each case the defendant's negligence consists in failure to protect the plaintiff against that very risk.").

Here, DeHart took advantage of his position of trust to abuse plaintiff sexually and emotionally within a cloak of secrecy and, even though the formal counseling relationship may not have continued, he continued the sexual and other abuse of plaintiff without interruption for the rest of her childhood. At least in these circumstances, we find no error in the trial court's refusal to give the requested instruction. *See generally* § 12–43–704(1)(q), C.R.S. (1991 Repl.Vol. 5B) (person practicing psychotherapy subject to discipline for engaging in sexual contact with a client during the therapeutic relationship and "for up to six months after the period in which such a relationship exists"); American Psychological Association, *Ethical Principles of Psychologists and Code of Conduct* Standard 4.07 (1992) ("(a) Psychologists do not engage in sexual intimacies with a former therapy patient or client for at least two years after cessation or termination of professional services. (b) Because sexual intimacies with a former therapy patient or client are so frequently harmful to the patient or client, and because such intimacies undermine public confidence in the psychology profession and thereby deter the public's use of needed services, psychologists do not engage in sexual intimacies with former therapy patients and clients even after a two-year interval except in the most unusual circumstances...."); E. Cruz, *When the Shepherd Preys on the Flock: Clergy Sexual Exploitation and the Search for Solutions,* 19 Fla.St.U.L.Rev. 499 (1991).

### III.

■ DeHart claims that the trial court's submission of the outrageous conduct and breach of fiduciary claims against him to the jury was violative of the Establishment Clause of the First Amendment. However, the supreme court held in *Moses v. Diocese of Colorado, supra,* and *Destefano v. Grabrian, supra,* that claims such as these are actionable at least when, as here, the defendant does not claim the conduct was religiously motivated.

■ The Conference similarly contends that submission to the jury of the negligent hiring and supervision and breach of fiduciary duty claims against it was violative of the Establishment Clause. The holdings in *Moses v. Diocese of Colorado, supra,* and *Destefano v. Grabrian, supra,* are equally dispositive of this contention. *See Winkler v. Rocky Mountain Conference of Methodist Church, supra.*

### IV.

■ DeHart and the Conference assert that the trial court erred when it refused to give an instruction on comparative fault or otherwise submit the defense of consent to the jury. We are not persuaded.

Defendants' assertion is premised on the assumption that a child is capable of giving the kind of consent the law should recognize to a sexual relationship with an adult religious counselor. However, a child is in no position to exercise independent judgment and evaluate on an equal basis the consequences of such a relationship. For a child induced to give such "consent," harm is not only still inflicted, it may be exacerbated. *See generally* E. Cruz, *When the Shepherd Preys on the Flock: Clergy Sexual Exploitation and the Search for Solutions, supra,* at 507–08 (common manifestations of the harm suffered by clients exploited by their religious counselors include "diminished self esteem, increased feelings of personal ambivalence, increased sexual difficulties, anger at being exploited, a feeling of being used as a sex object ... an inability to trust other

therapists ... anxiety and depression [that] sometimes lead to hospitalization and suicide attempts, ... a spiritual crisis ... reputations [that] are shredded ... [loss of jobs] and sometimes their entire lives in the community. These are not the usual results of a romantic relationship between two 'consenting adults.' ").

Defendants argue that the jury should have been able to consider as comparative fault plaintiff's consent at least in the later years of the relationship as plaintiff matured. The argument is similar to the argument that the jury should not be allowed to award damages for conduct occurring after the counseling relationship formally ended. It ignores that dependence, transference, and the resulting vulnerability do not cease merely because a child physically matures while sexual abuse in secrecy by an adult in a position of trust continues unabated. *Cf. Cassidy v. Smith,* 817 P.2d 555 (Colo.App. 1991) (Dubofsky, J., dissenting). It also ignores that, regardless of plaintiff's physical maturation, virtually all the sexual conduct occurred before plaintiff reached the age of majority.

The General Assembly has determined that consent is not a defense to a criminal charge of sexual assault on a child less than eighteen years of age by one in a position of trust. *See* §§ 18–3–405.3 & 18–3–408.5, C.R.S. (1995 Cum.Supp.). Nor is it a defense to a criminal charge of sexual assault by a psychotherapist upon a patient. *See* § 18–3–405.5, C.R.S. (1995 Cum.Supp.) We likewise decline to allow the defense, at least in the circumstances presented here. *Cf. Cassidy v. Smith, supra* (statute of limitations on claim of sexual abuse of a child does not begin to run until the child reaches the age of majority).

The trial court therefore did not err in refusing to instruct the jury on comparative fault or consent. *See* E. Cruz, *When the Shepherd Preys on the Flock: Clergy Sexual Exploitation and the Search for Solutions, supra* (positing that, because of the power imbalance, consent should not be available as a defense in a civil cause of action for injuries caused by sexual contact with a religious counselor); *see also University of Denver v.*

*Whitlock,* 744 P.2d 54 (Colo.1987) (if no duty of care is owed, no liability can be imposed); *cf. Simmons v. United States,* 805 F.2d 1363 (9th Cir.1986) (upholding finding that statute of limitations had not run because transference and dependence made it difficult for the plaintiff to believe that anything the therapist had done had caused her emotional damage, instead blaming herself); *Beyer v. First National Bank,* 843 P.2d 53 (Colo.App.1992). *But see Robinson v. Roberts,* 205 Ga.App. 645, 423 S.E.2d 17 (1992).

### V.

The Conference and DeHart contend that the trial court abused its discretion in denying their motion for continuance after they were unable to locate an expert witness. We do not agree.

 In deciding whether to grant a motion for continuance, the trial court should consider the circumstances of the particular case, weighing the right of the party requesting the continuance to a fair hearing against the prejudice that may result from the delay. Its decision is discretionary and will not be set aside on appeal absent an abuse of that discretion. *Butler v. Farner,* 704 P.2d 853 (Colo.1985).

 Here, plaintiff had endorsed a psychiatrist as an expert in June of 1993. After retaining their own expert, defendants requested that plaintiff submit to an examination in November. However, in a letter dated December 1, 1993, defendants asked plaintiff to stipulate to an extension in the time for the examination and in the deadline of December 24 for them to disclose the expert's findings and conclusions.

When plaintiff refused because of concern for preserving the trial date, defendants rescheduled the examination for December 24, 1993. After the examination, defendants sent plaintiff a copy of the expert's report with a letter dated December 31, 1993. However, defendants did not endorse the expert until January 14, 1994, twenty-one days after the C.R.C.P. 16 deadline. Defendants attempted to communicate with the expert through a letter dated January 19 but received no response.

On February 11, 1994, over plaintiff's objection, the court permitted the expert's late endorsement but required that defendants make the expert available for a deposition. However, defendants had been out of contact with the expert since January 6, 1994, and were unable to produce the expert for a deposition that had been scheduled for February 24, 1994. On March 1, 1994, thirteen days before the trial date, defendants filed their motion for continuance, indicating that the expert had disconnected her telephone and abandoned her office.

In ruling on defendants' motion, the trial court recognized that there had been some diligence by defendants, but it had already tried imposing a sanction less severe than exclusion for late endorsement of the witness. The court noted that defendants had selected the expert and then had insisted on retaining the expert, resulting in the late endorsement. The court further noted that the expert's report did not seem to be based on reasonable probabilities or professional standards but rather was a narrative of the expert's personal views, raising a question as to what actual value the expert might be to defendants at trial. Against the possible impact on defendants, the court weighed plaintiff's interest in finally resolving the case and avoiding the emotional and financial costs that would result from a continuance.

■ The issue is not how we might have ruled on the motion. Rather, defendants must demonstrate that the trial court's ruling was manifestly arbitrary, unreasonable, or unfair. *See Hock v. New York Life Insurance Co.,* 876 P.2d 1242 (Colo.1994).

The court properly weighed the prejudice to all parties before it denied the motion. Defendants had the information in the expert's report available for their cross-examinations at trial. They have not demonstrated any specific prejudice resulting from the court's ruling. In these circumstances, we cannot say the trial court abused its discretion in denying defendants' motion for a continuance. *See generally Butler v. Farner, supra.*

## VI.

The Church contends that the trial court abused its discretion in awarding plaintiff's costs against the three defendants jointly and severally rather than apportioning those costs among defendants "on a fair and reasonable basis." We perceive no abuse of discretion.

■ Section 13–16–104, C.R.S. (1987 Repl.Vol. 6A) provides that a plaintiff recovering for a wrong immediately personal to him or her shall recover costs. While the imposition of costs in such circumstances is required by this statute, the apportionment of costs among multiple defendants is not so prescribed. Thus, even though damages are apportioned pursuant to § 13–21–111.5, C.R.S. (1987 Repl.Vol. 6A), the award of costs remains in the discretion of the trial court. *See Winkler v. Rocky Mountain Conference of United Methodist Church, supra; see also Poole v. Estate of Collins,* 728 P.2d 741 (Colo.App.1986).

■ The trial court's imposition of joint and several liability for costs furthers the intent of § 13–16–104 that plaintiff recover her costs. Furthermore, a rule requiring that costs be apportioned based on fault would ignore that a plaintiff does not necessarily incur costs in direct proportion to the fault ultimately allocated by the jury among multiple defendants.

We also note that the Church has failed to address whether it may seek to recover from the other defendants, through an action for contribution, any costs it pays to plaintiff in excess of its proportionate share. *See* § 13–50.5–104, C.R.S. (1987 Repl.Vol. 6A); *National Farmers Union Property & Casualty Co. v. Frackelton,* 662 P.2d 1056 (Colo.1983); *see also Graber v. Westaway,* 809 P.2d 1126 (Colo.App.1991).

Finally, we note that had the other defendants not been sued by plaintiff, and the Church had then designated them as nonparties at fault pursuant to § 13–21–111.5, the Church would have been liable for the entire amount of costs, regardless of the proportion of fault allocated by the jury to the designated nonparties. The Church has not demon-

strated why such an award of costs should be permitted but not the award here.

For these reasons, we perceive no abuse of discretion in the trial court's ruling. *See Winkler v. Rocky Mountain Conference of United Methodist Church, supra.*

## VII.

The Conference contends the trial court erred in denying its motion for a directed verdict on the claim against it for breach of fiduciary duty. Based on the evidence in the record, we agree.

■ A directed verdict may properly be granted when the evidence, viewed in the light most favorable to the plaintiff, is insufficient to support a verdict in his or her favor on that claim. The test on review is whether reasonable persons could draw different conclusions from the evidence presented. *See Moore v. Georgeson,* 679 P.2d 1099 (Colo. App.1983).

■ Critical here is the distinction between a claim for clergy malpractice, which because of the constraints of the First Amendment the courts may not entertain, and a claim for breach of fiduciary duty, which may properly be brought to the extent that the alleged wrongdoing falls outside the beliefs and doctrine of the religion. *See Moses v. Diocese of Colorado, supra; Destefano v. Grabrian, supra.*

■ An unequal relationship does not automatically create a fiduciary duty. In order to be liable the superior party must assume a duty to act with utmost good faith and solely or primarily for the benefit of the dependent party. *Moses v. Diocese of Colorado, supra.*

■ In this case, plaintiff has directed us to no evidence, and we can find none, suggesting that the Conference ever assumed a duty to act solely or primarily in the best interests of plaintiff in its investigation and resolution of her complaint. Unlike the church officials in *Moses v. Diocese of Colorado, supra,* no bishop or other representative of the Conference ever asked plaintiff to refrain from discussing the matter with anyone or asked plaintiff to let the Conference alone supervise whatever needed to happen

on her behalf. *See generally United Fire & Casualty Co. v. Nissan Motor Corp.,* 164 Colo. 42, 433 P.2d 769 (1967); *First National Bank v. Collins,* 44 Colo.App. 228, 616 P.2d 154 (1980) (no fiduciary duty could exist if neither the nature of relationship nor conduct would have induced the plaintiff to relax the care and vigilance that would and should have ordinarily been exercised in dealing with a stranger). Indeed, plaintiff had previously sought and obtained support and counseling from others, which continued during and after her contact with the Conference, and her contact with local authorities led to criminal charges against DeHart.

Plaintiff argues that the jury properly could have found that a representative of the Conference lied in telling her that once DeHart surrendered his credentials under protest nothing further remained to be done to effect the termination of his ministry and that no authority existed to conduct any further investigation. She asserts that she suffered substantial harm because the Conference, in violation of its own Book of Discipline, failed to take further action to investigate plaintiff's complaint and fulfill its responsibilities to her. As described by a bishop in his testimony, these included the processes of "restoration" and "reconciliation."

However, the alleged wrongdoing results from expectations created by the beliefs and doctrine of the religion. Resolution of the claim would require that the courts become embroiled in a religious dispute requiring the interpretation and weighing of that doctrine. The First Amendment requires that we abstain from doing so and thus precludes an award of damages on such a basis. *See Moses v. Diocese of Colorado, supra; Destefano v. Grabrian, supra; DeBose v. Bear Valley Church of Christ, supra; cf. Van Osdol v. Vogt,* 908 P.2d 1122 (Colo.1996).

The trial court therefore erred in denying the Conference's motion for a directed verdict on the claim against it of breach of fiduciary duty.

## VIII.

■ DeHart and the Conference contend that the trial court committed reversible er-

ror in submitting to the jury verdict forms which did not meaningfully separate damages resulting from DeHart's conduct from those resulting from the Conference's response to plaintiff's complaint. They contend the court further erred in not requiring the jury to allocate liability among defendants for the injuries caused by DeHart's conduct. We agree the verdict forms were deficient.

Here, the trial court submitted to the jury two special verdict forms for each defendant. One was to be used if the jury found for defendant. The other was for use upon a finding of liability and provided blank spaces for an award to plaintiff against the particular defendant for past and future damages, as well as punitive damages. None of the forms required the jury to allocate liability based on fault for injuries resulting from DeHart's conduct or to separate those damages from any separate damages resulting from the response by the Conference to plaintiff's complaint.

In his challenge to the verdict forms at trial, DeHart argued that, as long as the consequences to plaintiff for breach of fiduciary duty, outrageous conduct, and negligent hiring and supervision were the same, the damages recoverable under those different legal theories were the same. Hence, he argued that the jury should make a single determination of the amount of damages, if any, caused by plaintiff's relationship with DeHart and then, pursuant to § 13–21–111.5, C.R.S. (1987 Repl.Vol. 6A) the jury should allocate fault among the three defendants for the damages resulting from the relationship. He further argued that, because only the Conference should be held liable for damages caused by its response to plaintiff's complaint to it, the jury should separately determine those damages.

In rejecting DeHart's arguments, the trial court in this case did not have the benefit of the analysis of these issues set forth in De-Bose v. Bear Valley Church of Christ, supra. A division of this court in DeBose concluded that when an employer's negligent hiring or supervision of an employee did not result in any additional harm to the plaintiff beyond that caused by the employee, awards of separate damages against the employer and em-ployee can result in the duplication of damages. Even though the jury in DeBose had been instructed not to assess damages under one theory of recovery they had assessed under another, it had been provided no instructional guidance as to the manner in which it was to divide the total damages suffered by the minor among his various claims.

Because the verdict form in DeBose had not provided for the jury, on the one hand, to make one award of damages for any single, indivisible injury and to apportion those damages pursuant to § 13–21–111.5(2), C.R.S. (1987 Repl.Vol. 6A) based on fault, and, on the other hand, to make a separate award of damages for any separate injury only against the defendants responsible for those damages, the court there concluded that the awards for compensatory damages had to be set aside. And, because the compensatory damages had to be set aside, the judgment for exemplary damages also had to be reversed. The court concluded: "Upon retrial, any verdict assessing the minor's actual damages should be limited to a single amount, apportioned under § 13–21–111.5(2), unless the evidence would allow a determination that the minor suffered a separate injury from the actions of each of the ... defendants." DeBose v. Bear Valley Church of Christ, supra, 890 P.2d at 224.

Here, we cannot assume that the amounts awarded by the jury against the separate defendants are for separate injuries or that they are the equivalent of an apportionment based on fault. The jury was not instructed to divide damages based on fault for a single, indivisible injury. Further, the verdict form for the Conference provided for a single award against it on the claims for negligent hiring and supervision and breach of fiduciary duty. We therefore cannot determine to what extent, if any, the award against the Conference is for any separate injury caused by its own conduct after plaintiff submitted to it her complaint against DeHart, as distinct from the injury caused by DeHart's conduct for which, to the extent the injury is the same, the Conference and the Church share liability because of their negligent hiring and supervision.

We agree with the analysis set forth in *DeBose.* It is therefore necessary to reverse the compensatory and punitive damage awards against both DeHart and the Conference.

However, we find no reason to reverse the judgments of liability for compensatory and punitive damages against DeHart for breach of fiduciary duty and outrageous conduct and for compensatory damages against the Conference for negligent hiring and supervision. Rather, only the damage awards against them must be reversed, with the jury on retrial to determine the amount of compensatory damages sustained for any single, indivisible injury, to apportion fault among defendants for that injury, and to determine the amount of punitive damages to be awarded against DeHart. *See Murrow v. Whiteley,* 125 Colo. 392, 404, 244 P.2d 657, 663 (1952) (authorizing partial new trial on damages only under test first articulated by the United States Supreme Court: "Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."); *see generally* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2814 (2d ed. 1995); *cf. Bassett v. O'Dell,* 178 Colo. 425, 498 P.2d 1134 (1972).

The judgment of liability for punitive damages against the Conference cannot be similarly sustained. The verdict form for the Conference does not indicate whether the award of punitive damages against it was based on conduct associated with the claim for negligent hiring and supervision, the claim for breach of fiduciary duty, or both claims. Because we have reversed the judgment against the Conference for breach of fiduciary duty, it is necessary to reverse the judgment of liability against it for punitive damages, with the jury on retrial to determine whether plaintiff is entitled to punitive damages against the Conference based solely on its conduct associated with the claim for negligent hiring and supervision and, if so, the amount of punitive damages to be awarded.

A separate problem then arises. Here, unlike in *DeBose,* there are three defendants, only two of which have appealed the judgments entered against them. No party has appealed the judgment entered against the Church for $37,500 in compensatory damages. Hence, while the jury on retrial must include the Church in any allocation of fault so that on remand the damage award against the other two defendants may be properly calculated, the Church cannot be liable for any amount other than the judgment already entered. It should therefore be treated on retrial as a designated nonparty at fault pursuant to § 13–21–111.5(3)(a), C.R.S. (1987 Repl.Vol. 6A).

The judgment of liability against DeHart on the claims for breach of fiduciary duty, outrageous conduct, and punitive damages, the judgment of liability against the Conference on the claim for negligent hiring and supervision, and the award of costs jointly and severally against all defendants are affirmed. The judgment of liability on the claims against the Conference for breach of fiduciary duty and for punitive damages are reversed. The compensatory and punitive damage awards against DeHart and the Conference are also reversed. The cause is remanded for a new trial to allocate fault among defendant, to determine compensatory damages to be awarded against DeHart and the Conference, to determine punitive damages to be awarded against DeHart, and to determine whether and, if so, in what amount, punitive damages should be awarded against the Conference, consistent with the views expressed in this opinion.

STERNBERG, C.J., and MARQUEZ, J., concur.