346 So.2d 1012 (1977)
Doris A. LAWRENCE, Petitioner,
v.
FLORIDA EAST COAST RAILWAY COMPANY, a Corporation, Respondent.
No. 49275.
Supreme Court of Florida.
April 29, 1977.
Rehearing Denied June 29, 1977.
*1013 Arnold R. Ginsberg, Horton, Perse & Ginsberg, and Beckham & McAliley, Miami, for petitioner.
Kenneth L. Ryskamp and Arthur M. Simon, Bolles, Goodwin, Ryskamp & Welcher, Miami, for respondent.
BOYD, Justice.
We have before us a decision of the District Court of Appeal, Fourth District, reported at 328 So.2d 249. We have jurisdiction because in the decision the District Court certified a question as one of great public interest.[1]
This is the factual background of the case. The husband of Doris Lawrence was struck and killed by a Florida Eastcoast Railway train while driving through the King Street crossing in Cocoa. As widow and representative of the estate, Mrs. Lawrence brought an action for wrongful death alleging the Railway's negligence in failing to furnish adequate warning of the train's approach.
Conflicting evidence on whether the King Street crossing warning system had operated properly was adduced at trial. Mrs. Lawrence called as an adverse witness the Railroad's Superintendent of Signals and Communications. When asked on direct examination whether it was possible for the warning system to have malfunctioned, the Superintendent replied:
"Crossing signal circuits are designed fail-safe, as far as humanly possible. They are maintained to be fail-safe, as far as humanly possible. Anything could happen."
For the avowed purpose of impeaching the Superintendent's testimony, Mrs. Lawrence introduced into evidence three reported instances of gate malfunctions at crossings other than the King Street crossing which had occurred within ninety days of the accident. The Railway's objection to the evidence was overruled.
After Mrs. Lawrence presented her case, the Railway Company offered the defense that the decedent was contributorily negligent. The jury was instructed on comparative negligence, but the trial court refused the Railway's request that there be submitted to the jury special verdict forms which would reveal the percentage of the parties' negligence as determined by the *1014 jury. The jury returned a verdict in favor of Mrs. Lawrence.
On appeal, the District Court of Appeal, Fourth District, stated that for evidence of prior similar incidents at railroad crossings to be admissible in the case-in-chief, the prior incidents must have occurred at the same crossing at which the litigated accident occurred. The court then reversed because of the great prejudicial effect of the admission of the prior similar incident evidence. To Mrs. Lawrence's contention that such evidence is admissible for impeachment purposes, the court answered that the evidence was introduced during Mrs. Lawrence's direct examination and, furthermore, that the witness had conceded the fallibility of the system when he said, "Anything could happen."
In addition, the court was inclined to hold that the failure to submit special verdict interrogatories to the jury, at the request of the Railway Company, constituted reversible error. Although this Court permits the use of special verdicts in the discretion of the trial court, Hoffman v. Jones, 280 So.2d 431 (Fla. 1973) and Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975), this Court has never held that special verdict interrogatories must be submitted to the jury on comparative negligence issues when requested by a party. After reviewing authorities stressing the importance of special verdicts in comparative negligence cases, the court certified the following question as one of great public interest:
Whether the adoption and application of the principle of comparative negligence requires the submission of special verdicts to the jury on the percentage of fault of each party (plaintiff and defendant) where either party requests the submission of special verdicts?

I.
We direct our attention first to the issue of admission of the evidence of similar gate malfunctions at other railroad crossings.[2] That the evidence was avowed by the plaintiff to be used to impeach an adverse witness whom she had called to the stand does not require its exclusion from evidence. The common law rule that a party cannot impeach its own witness is based, first, on the reason that by calling the witness the party vouchsafes for his trustworthiness and, second, on the reason that the power to impeach is the power to coerce the witness to testify as desired under an implied threat to attack his character, if he does not. McCormick on Evidence, § 38 2d Ed. (1972). These reasons are inapplicable if the witness is adverse to the party's position and the Railway's Superintendent of Signals and Communications, when called by Mrs. Lawrence, was surely an adverse witness. Even when the witness is not adverse, the rule doe not apply to forbid a party to introduce other evidence to contradict the testimony of his own witness when the aim of the evidence is to dispute and not to impeach. 98 C.J.S. Witnesses § 630 and cases collected thereunder. Despite counsel's avowal that the evidence was for impeachment, we believe the evidence should not have been excluded since it contradicted the Superintendent's testimony that the signal system was as fail-safe as humanly possible. Although the Superintendent testified that "anything could happen," the clear thrust of his testimony was that there existed an aura of infallibility about the signal system. The evidence pierced that aura and in so doing contradicted the testimony of the witness, thereby putting the evidence beyond the reach of the rule.
That the evidence should not have been excluded under an impeachment rule does not decide its admissibility. Admission of the evidence obviously prejudiced the case of the Railroad. The prejudice is justified if outweighed by the probative value of the evidence, and so we inquire into its relevancy.
*1015 The District Court thought the evidence should have been excluded because the malfunctions had not occurred at the crossing at which the litigated accident occurred. Evidence of prior accidents at the same railroad crossing, when the conditions surrounding the accidents are similar and not too remote in time, have been held relevant for the purpose of showing the dangerous character of the place and the defendant's knowledge thereof and therefore admissible. Perret v. Seaboard Coast Line Railroad Co., 299 So.2d 590 (Fla. 1974). Other cases have held evidence of prior similar accidents at the same crossing admissible. Friddle v. Seaboard Coast Railroad Co., 306 So.2d 97 (Fla. 1975) and Loftin v. Dagley, 152 Fla. 831, 13 So.2d 311 (1943). As the District Court pointed out, the rule does not permit admission of evidence of prior accidents at other crossings and in view of the relevancy of similar accident evidence, as it relates to place, we believe it sound not to admit such evidence.
However, Mrs. Lawrence argues that the evidence was not introduced for the purpose of showing that the King's Street crossing was dangerous, but rather for the purpose of showing that the Railroad had notice that the signal system was not operating properly. The record supports her argument. It appears the District Court confused the rule governing prior similar accidents with the rule governing admission of evidence of notice of defective appliances. As was said in Friddle, supra,
"Evidence of ... prior similar injuries resulting from the same appliance, as that of the accident or injury in suit, is generally admissible for the purpose of showing the existence of dangerous or defective ... appliances and notice or knowledge thereof... ." 328 So.2d at 251.
Although no injuries resulted from the other gate malfunctions, we believe the evidence of their occurrence was relevant for showing notice of a defective system, provided the proper predicate of similarity was established. An ironclad rule of what constitutes similarity would most likely defeat the administration of justice. Therefore, we think determinations of whether a proper predicate of similarity exists should be left to the sound discretion of the trial judge. Some of the guidelines for determining similarity in cases such as this one are the other gate malfunctions closeness in time to the alleged malfunction in the litigated accident, the frequency of the other malfunctions and, of course, the substantial similarity in the type of signal systems at the various crossings. In this case the trial judge acted within proper limits of discretion since his determination that a predicate of similarity existed was founded on the fact that three reported instances of gate malfunctions in signal systems, substantially the same as the system at the King's Street crossing, had occurred within ninety days of Mr. Lawrence's accident.
The evidence was relevant to prove that the railroad had notice of the possible defective condition of the signal system at the King's Street crossing and its probative value outweighed any prejudice to the railroad. Therefore, we hold the evidence of the gate malfunctions at other crossings to have been properly admitted within the sound discretion of the trial judge and the decision of the District Court is quashed to the extent it is inconsistent with this opinion.

II.
When the rule of comparative negligence was adopted in Hoffman v. Jones, it was stated,
"In accomplishing these purposes, the trial court is authorized to require special verdicts to be returned by the jury and to enter such judgment or judgments as may truly reflect the intent of the jury as expressed in any verdict or verdicts which may be returned." 280 So.2d at 439.
Thus, the utility of special verdicts in suits involving comparative negligence has been recognized by this Court. Until now the use of special verdicts has been limited to when the trial courts choose to require them. For the first time we are squarely presented with the question of whether *1016 they must be used in trials at which comparative negligence is in issue if either party requests their use.
At the outset we would like to make it clear that a decision to require special verdicts in cases of this kind will not apply to this case. The trial court was following the law as it existed at the time of the trial when he chose not to require special verdicts. To require a new trial now because special verdicts were not used would be like changing the rules after a game had been played and requiring a rematch.
The District Court was inclined to the view that a special verdict showing the percentage of fault of the parties should be required in cases where comparative negligence is at issue when a party requests it. A few quotations from the well written opinion of the District Court of Appeal, Fourth District, are helpful in our decision.
"... At the very heart of the adoption of comparative negligence was the pragmatic recognition that juries invariably `balanced' the negligence of the parties to ultimately arrive at a fair result and a reaffirmance of the principle that the jury system was capable of keeping pace with any such change. If, therefore, we have admonished the jury to continue to do that which it was doing anyway but to do so `in the open' as a recognized and standardized practice, assuredly the jury is capable of spelling out its verdict with percentile specificity, i.e. delineating the degree of negligence of each party in a percentage form.
* * * * * *
"... By adopting a system of special verdicts we can ascertain whether the comparative negligence principle is actually being applied. We can determine with some degree of reliability whether comparative negligence is a living and practicing doctrine or merely a lofty concept without pragmatic results." 328 So.2d at 253, 254.
* * * * * *
"A discussion of the necessity for the use of special verdicts is contained in Maloney, From Contributory to Comparative Negligence; a Needed Reform, 11 U.Fla. L.Rev. 135, 170-3 (1958); Timmons and Silvis, Pure Comparative Negligence in Florida, 28 U.Miami L.Rev. 737, 800 (1974); Prosser, Comparative Negligence, 51 Mich.L.Rev. 465 (1953); see also Schwartz, Comparative Negligence (1974), sec. 174; 32 A.L.R.3d 463, 492, annotation: Negligence  Comparative  Contributory. All of the treatises recognize that the special verdict will serve to insure that the comparative negligence law achieves its desired goal of apportioning damages on the basis of fault. The treatises also recognize that in addition to the equitable considerations there is a practical need for special verdicts, e.g. it puts the mathematical computations in the hands of the judge rather than a jury and provides a means for appellate review of these computations. As additionally pointed out in the University of Miami Law Review article at page 802:
`Prosser observed three main reasons for the adoption of special verdicts in conjunction with the adoption of comparative negligence: (1) it allows for the correction of jury error (a remittitur may save a new trial); (2) it forces detailed consideration by the jury rather than allowing it to jump to a conclusion on a "gut reaction"; and (3) it enables the court to avoid the necessity of using long, complicated jury instructions which would open the door to reversible error.' (28 U.Miami L.R. at 802)
"It is particularly interesting to note the observations made by one textwriter that of the ten states following comparative negligence wherein special verdicts are specifically provided for, four of the states require a special verdict in every case where contributory negligence is an issue; in the other six, a special verdict may be required in the discretion of the court and must be required upon timely request made by any party. See Schwartz, Comparative Negligence, supra." 328 So.2d at 255.
*1017 Just as changing winds require seamen to adjust their sails, courts must alter procedures to meet the needs of society.
In response to the certified question, we have carefully considered the procedures and results used by the use of court discretion in comparative negligence trials. Fairness requires uniformity in the State judicial system. The concept of comparative negligence contemplates findings of the relative degrees of negligence of each party found to be at fault.
We hold that special verdicts shall be required in all jury trials involving comparative negligence. When comparative negligence is at issue in nonjury trials, the court shall make findings of record required by special verdicts.
Since courts have heretofore exercised their discretion in requiring special verdicts, as authorized in Hoffman v. Jones, supra, this decision shall be prospective only from the effective date of this decision and shall have no retroactive effect.
Accordingly, that portion of the opinion of the District Court of Appeal, Fourth District, requiring a new trial is quashed and the certified question is answered to require special verdicts in all cases involving comparative negligence.
It is so ordered.
OVERTON, C.J., and ENGLAND and HATCHETT, JJ., concur.
SUNDBERG, J., concurs in part and dissents in part with an opinion, with which ADKINS and KARL, JJ., concur.
SUNDBERG, Justice, concurring in part and dissenting in part.
I concur in that portion of the majority opinion which deals with the admission of evidence of notice of defective appliances. However, I must respectfully dissent from that part of the opinion which responds to the certified question in the affirmative.
In Hoffman v. Jones, 280 So.2d 431, 439 (Fla. 1973,) we iterated our full confidence that the trial court judges of this state could handle adequately any problems created by the change to a comparative negligence rule as such problems arose. After stating the purposes for the adoption of the comparative negligence rule, we concluded that trial judges were authorized (not required) to provide for special verdicts to be returned by the jury. This is consistent with the procedure adopted in California whose Supreme Court followed Florida's lead in judicially adopting the rule of comparative negligence. See Li v. Yellow Cab Co. of California, 13 Cal.3d 804, 119 Cal. Rptr. 858, 532 P.2d 1226, 1240 (1975). It is apparent that in multi-party incidents involving more than simply one plaintiff and one defendant special verdicts can be of assistance to the jury and the court. Our present practice permits the trial judge to exercise his discretion to require a special verdict in such instances. However, the trial judge is not presently mandated to require special verdicts in every case. It has not been demonstrated that our confidence in the circuit court bench expressed in Hoffman was misplaced. Therefore, I would not make it mandatory upon the trial court to require special verdicts where in the judgment of the trial judge such is not required.
Furthermore, I do not believe that special verdicts are the panacea they are asserted to be by the opinion of the District Court of Appeal, Fourth District, whose reasoning is accepted by the majority. In fact, special verdict forms may tend to confuse a jury in the two-party incident case and cause a double reduction in damages when the jury attempts to apply the directions of the standard jury instruction on comparative negligence to the special verdict form. See Schlein v. Florida East Coast Railway, 339 So.2d 1142 (Fla.3d DCA 1976).
We have been ever vigilant in our system of jurisprudence to insure the sanctity of jury deliberations. In complex cases where, in the discretion of the trial judge, a special verdict is essential to proper application of the rule of comparative negligence, an encroachment upon the confidentiality of the jury's deliberations may be justified. However, I would not extend the present rule *1018 which already treads perilously close to requiring the jury to divulge their thought processes and justify on paper the basis for their decision. I would respond to the certified question in the negative.
ADKINS and KARL, JJ., concur.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const.
[2] The Railroad has moved that we not consider this issue since it was not presented by the petition for certiorari. We deem it our prerogative to consider any error in the record once we have it properly before us for our review. The record is properly before us on the certified question.