Gina (Gigi) BORYLA, Petitioner/Cross–Respondent,

v.

Robert M. PASH, M.D., Respondent/Cross–Petitioner.

No. 96SC735.

Supreme Court of Colorado,
En Banc.

June 15, 1998.

Grimshaw & Harring, P.C., William J. Brady, Lisa K. Norberg, Denver, for Petitioner/Cross–Respondent.

Kennedy & Christopher, P.C., John R. Mann, Elizabeth A. Starrs, Denver, for Respondent/Cross–Petitioner.

Colorado Trial Lawyers Amicus Committee, Brian J. Lampert, Chair, Linda Lupatkin, Denver, for Amicus Curiae The Colorado Trial Lawyers Association.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Boryla v. Pash*, 937 P.2d 813 (Colo.App.1996), to determine whether the court of appeals correctly reversed a jury verdict awarding the plaintiff $220,000 in noneconomic damages in a case involving a physician's failure to promptly diagnose a patient's breast cancer. The court of appeals held that the trial court erred in not granting, in part, a motion for directed verdict and that a new trial was necessary to determine issues relating to causation and damages. We reverse.

## I.

While performing a routine self-exam in early February of 1990, thirty-two-year-old Gina "Gigi" Boryla (Boryla) discovered a lump in her right breast. A subsequent examination by Boryla's family physician revealed a movable mass which could not be successfully aspirated. The family physician referred Boryla to Dr. Robert M. Pash (Dr. Pash), who examined Boryla on February 20, 1990, and detected a "nodule" that, in his words, was "smaller than a marble" and "larger than a pea." Dr. Pash performed a biopsy on February 22, 1990, but did not request a mammogram. Test results from the biopsy were negative for cancer.

Boryla returned to see Dr. Pash on April 30, 1990, complaining that the lump in her breast had not gone away. Dr. Pash performed a needle aspiration of the thickened area but did not draw blood because Boryla was in mid-menstrual cycle. For this reason, Dr. Pash asked Boryla to return in two weeks if the problem persisted. On May 21, 1990, Dr. Pash examined Boryla again and scheduled a mammogram for May 23, 1990, as well as another biopsy for June 4, 1990. The treating radiologist who performed the mammogram reported that "[i]n the upper central portion of [Boryla's] right breast, there is an area of increased density which is extremely irregular.... It measures approximately three centimeters in diameter in the lateral view and four by three centimeters in the craniocauded projection. The finding is highly suspicious for a malignan-

cy." After receiving the mammogram results, Dr. Pash rescheduled the biopsy for May 25, 1990, whereupon the growth in Boryla's breast was determined to be cancerous and invasive.[1] A radical mastectomy and surgical removal of Boryla's lymph nodes was performed on June 1, 1990. The surgery was successful and Boryla has not experienced any recurrence of cancer since her operation.

On February 18, 1992, Boryla sued Dr. Pash for negligence in not promptly diagnosing her cancer. Specifically, Boryla alleged that the ninety-two-day delay in diagnosing her condition resulted in an increased number of cancer cells in her body and caused the tumor to grow in size. Boryla sought damages for

i) past, present and future pain, suffering and discomfort, both physical and mental;

ii) severe and at times debilitating emotional distress, including fear of an increased risk of recurrence of cancer;

iii) loss of enjoyment of life, past, present and future;

iv) damages, losses and other physical and psychological injuries that are not known at this time;

v) loss of time; and

vi) reasonable and necessary medical and other incidental and out-of-pocket expenses.

A trial ensued on March 7, 1994, approximately four years after Dr. Pash first examined Boryla. Boryla's treating oncologist, Dr. Scott Sedlacek, described Boryla's cancer as "moderately aggressive" and testified that the average cancer cell doubles once every hundred days and that it was more probable than not that Boryla experienced some cancerous growth during the period involving the delayed diagnosis.[2] Dr. Sedlacek also testified that a patient with cancer exactly like Boryla's had a twenty-five percent risk of the cancer recurring in the future and that these patients have the highest chance of recurrence in the five years following surgery.[3] Dr. Sedlacek further explained that a recurrence of cancer in these patients is usually terminal.

Boryla's primary expert, Dr. Julian Frieden, testified that, in his expert opinion, the three-month delay in treating Boryla's cancer increased the chances of cancer metastasis or spread, and decreased the chances of the cancer's curability because "every day counts." Dr. Frieden also testified that in his expert opinion, the three-month delay in diagnosing Boryla's cancer increased the risk of cancer recurrence because "[e]very day, there is a chance of cells . . . metastasizing to various organs." Finally, Dr. Frieden testified that it was "entirely reasonable" for Boryla to have "cancerphobia" because of the delayed diagnosis.[4]

Even though Dr. Pash's experts were of the opinion that the delay in diagnosing Boryla's cancer did not alter her treatment or prognosis, several acknowledged the physical effects associated with the delay. For example, Dr. Leonard Glode, a professor at the University Of Colorado Medical School, testified on cross-examination that Boryla's cancer cells continued to multiply during the period involving the delayed diagnosis. Dr. Glode also testified that because the average tumor doubles in volume every forty-five days, Boryla's tumor could have doubled in size during this period.[5] Dr. Glode also con-

---

1. In explaining to the Borylas why the cancer had not been detected earlier, Dr. Pash stated that the first biopsy "did not go down deep enough" to reveal the presence of cancer.

2. Dr. Sedlacek also explained that the size of a tumor is a "very important secondary factor" in determining a breast cancer patient's prognosis.

3. Dr. Sedlacek testified that in years five through ten, a breast cancer patient's risk of recurrence drops to between five and ten percent. In years ten through twenty, the risk drops even more to between three and five percent.

4. Boryla's treating psychologist, Dr. James Frantz, testified that Boryla suffered from depression caused in part by intertwined feelings concerning her breast cancer, its possible recurrence, and the delayed diagnosis. Dr. Frantz also testified that in their counseling sessions, Boryla occasionally demonstrated "anxiety, fear, sadness, and some anger" towards Dr. Pash.

5. Another of Dr. Pash's medical experts, Dr. David Hutchison, admitted on cross-examination that during the period involving the delayed diagnosis, there was a greater chance that the cancer cells metastasized into the tissues surrounding Boryla's tumor.

ceded on cross-examination that the larger the size of the tumor, the worse the prognostic indicator for recurrence.

After the presentation of Boryla's case, Dr. Pash moved for a directed verdict, claiming that Boryla had failed to meet her burden in proving injuries caused by the delayed diagnosis. The trial court denied the motion, concluding that the court of appeals' decision in *MacMahon v. Nelson,* 39 Colo.App. 355, 568 P.2d 90 (1977), permitted the presentation of Boryla's claims to the jury. However, the trial court agreed to "take this under advisement" and offered to reconsider the motion after the jury's verdict.

The jury was instructed on damages as follows:

> If you find in favor of the Plaintiff Gina Boryla, you shall award as her actual damages, insofar as they have been proved by a preponderance of the evidence, and insofar as they were caused by the Defendant's negligence, an amount which will reasonably compensate the plaintiff for her damages, if any.

> In determining such damages you shall consider the following:

> 1. any noneconomic losses or injuries incurred to the present time, or which will probably be incurred in the future including: pain and suffering; inconvenience; emotional stress; and impairment of the quality of life *caused by an increased risk of cancer due to an increase of cancer cells in her body.*

> 2. any economic loss consisting of expenses for counseling and therapeutic services.[6]

(Emphasis added.) On March 14, 1994, the jury awarded Boryla $220,000 in noneconomic damages. No economic damages were awarded. Dr. Pash subsequently renewed his motion for a directed verdict, or in the alternative, for judgment notwithstanding the verdict. The trial court denied both motions. The trial court also denied Dr. Pash's post-trial motions requesting a new trial and a remittitur of damages. Both parties appealed.[7]

On appeal, the court of appeals' opinion considered two issues. First, the court of appeals held that the trial court erred in not granting Dr. Pash's motion for a directed verdict in part to preclude Boryla from recovering damages for the possibility that she might suffer a recurrence of cancer in the future. Specifically, the court of appeals held that Boryla could not recover damages for an increased risk of cancer recurrence because she failed to prove to a reasonable medical probability that this *future injury* was more likely than not to occur. For this reason, the court of appeals held that a new trial was warranted.

Second, the court of appeals rejected Dr. Pash's argument that Boryla could only recover for her *present fear* of recurring cancer caused by Dr. Pash's negligence if she demonstrated that the increased risk of a recurrence of cancer was more probable than not. The court of appeals determined that Boryla's fear need only be reasonable and proximately caused by Dr. Pash's negligence. Nevertheless, the court of appeals explained that, on remand, "the trial court must ... appropriately instruct the jury on the reasonableness" of Boryla's fear of cancer. *Boryla,* 937 P.2d at 819–20.

Because the court of appeals determined that a new trial was warranted, it refused to consider the remaining issues raised on appeal. We granted certiorari to consider the issues raised by the court of appeals' decision.

## II.

■ Boryla argues that the court of appeals erred in concluding that Dr. Pash's motion for a directed verdict should have been granted in part to preclude Boryla from recovering damages for the risk of a future recurrence of cancer. Boryla also asserts that the jury was appropriately instructed on the applicable law and that sufficient evidence supports the jury's verdict. We agree.

■ Directed verdicts are not favored because "[w]hen a plaintiff makes out a pri-

---

6. This instruction, with the underlined portion added, closely follows CJI–Civ 3d 6:1A (1988).

7. Boryla's appeal concerned the recovery of costs and statutory interest.

ma facie case, even though the facts are in dispute, it is for the jury, and not the judge, to resolve the conflict." *See Rocky Mountain Hosp. and Med. Serv. v. Mariani,* 916 P.2d 519, 526–27 (Colo.1996) (quoting *Romero v. Denver & Rio Grande W. Ry.,* 183 Colo. 32, 37, 514 P.2d 626, 629 (1973)). In reviewing a motion for a directed verdict, a court must consider all of the facts in the light most favorable to the nonmoving party, and determine whether a reasonable jury could have found in favor of the nonmoving party. *See Mariani,* 916 P.2d at 527. As we explained in *McGlasson v. Barger,* 163 Colo. 438, 442, 431 P.2d 778, 779 (1967),

> [a] motion for directed verdict can only be granted where the evidence, when so considered, compels the conclusion that the minds of reasonable men could not be in disagreement and that no evidence, or legitimate inference arising therefrom, has been presented upon which a jury's verdict against the moving party could be sustained.

At the outset, we note that Boryla did not request damages for the increased possibility that she might suffer a recurrence of cancer in her complaint. Instead, she sought damages for "emotional distress, including *fear* of an increased risk of recurrence of cancer." (Emphasis added.) Similarly, Boryla's case at trial focused more on the emotional distress brought on by the increased risk caused by Dr. Pash's misdiagnosis than the risk itself.

Nevertheless, there was sufficient evidence that Boryla suffered an increased cancer risk to survive the motion for a directed verdict. Specifically, Boryla presented evidence that the delay in diagnosis led to the following physical effects: (1) an increase in the size of the tumor and the number of cancer cells in her body; (2) the possible metastasis of existing cancer cells; and (3) the development of further genetic resistance to treatment. In addition, Dr. Frieden testified that, in his expert opinion, the delayed diagnosis increased Boryla's risk of recurring cancer,

which made her fear of the increased risk "entirely reasonable."

Viewing this evidence in the light most favorable to Boryla, a triable issue exists as to whether, and to what extent, Boryla's risk of cancer recurrence increased as a result of the delayed diagnosis. *See Parker v. Collins,* 605 So.2d 824, 827 (Ala.1992); *DeBurkarte v. Louvar,* 393 N.W.2d 131, 137–38 (Iowa 1986); *Glicklich v. Spievack,* 16 Mass.App.Ct. 488, 452 N.E.2d 287, 292 (1983); *Evers v. Dollinger,* 95 N.J. 399, 471 A.2d 405, 409 (1984); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, 1288–89 (1978); *Herskovits v. Group Health Co-op.,* 99 Wash.2d 609, 664 P.2d 474, 479 (1983); *see also* Restatement (Second) of Torts § 323 (1965).

■ More importantly, by presenting evidence that her condition physically worsened as a result of the delayed diagnosis, Boryla established an attendant physical injury which permitted the jury to consider damages for the emotional distress stemming from her fear of an increased risk of cancer recurrence. *See MacMahon,* 39 Colo.App. at 356, 568 P.2d at 91; *Evers,* 471 A.2d at 411–12.[8] As our court of appeals explained in *MacMahon,*

> there was adequate evidence that defendant's incorrect diagnosis proximately caused plaintiff to suffer compensable emotional distress when she learned that removal of a cancerous tumor had been delayed for eight months.... That emotional distress would be a consequence of defendant's alleged negligence need not be supported by expert testimony, such being a matter fully within the personal knowledge or experience of the jury.
>
> We do not consider whether mental distress occasioned by negligence states a claim in the absence of physical impact or injury. Here it was undisputed that the alleged incorrect diagnosis had a physical impact in that it permitted the further growth of the malignant tumor.

*MacMahon,* 39 Colo.App. at 356, 568 P.2d at 91 (citations omitted). Accordingly, we hold

---

**8.** Although surgery removed Boryla's cancerous mass as well as her lymph nodes, medical evidence suggests that a delay in treatment which leads to the growth of a cancerous tumor "invariably results in a more serious prognosis" for long-term survival. *See Evers,* 471 A.2d at 410 n. 3.

that the trial court correctly denied Dr. Pash's motion for a directed verdict and properly submitted the case to the jury. *See Mariani,* 916 P.2d at 526–27.

### III.

■ We also disagree with the court of appeals that the jury was not properly instructed on the reasonableness of Boryla's fear of cancer. The jury instructions given in this case were largely patterned after model jury instructions. *See* C.R.C.P. 51.1(1). These instructions inform the jury that it may award damages to Boryla only if her injuries were caused by Dr. Pash's negligence. Similarly, several instructions imply that in order to recover for her emotional distress, Boryla's fear of an increased risk of cancer had to be reasonable. We must presume that the jury properly followed the instructions given to them in determining damages. *See Rego Co. v. McKown–Katy,* 801 P.2d 536, 539 (Colo.1990). Therefore, the trial court did not err in instructing the jury. *See Armentrout v. FMC Corp.,* 842 P.2d 175, 186 (Colo.1992) (explaining that "[a] judgment will not be reversed for refusal of the trial court to give requested instructions where there was not resulting substantial, prejudicial error"). Furthermore, because sufficient evidence exists in support of the jury's verdict, we will not disturb it on review. *See Hock v. New York Life Ins. Co.,* 876 P.2d 1242, 1259 (Colo.1994) (explaining that "[a]ppellate courts are bound by the jury's findings, and jury verdicts will not be reversed for inconsistency where the jury has been properly instructed by the trial court and the record contains sufficient competent evidence to support the finding").

Dr. Pash urges us to adopt the standard enunciated in *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795, 816 (1993), to preclude Boryla's fear of cancer claim.[9] We decline to adopt this standard.

In *Potter,* the plaintiffs were four landowners who were exposed to carcinogens in their drinking water as a result of Firestone's disposal of toxic chemicals at a landfill. Although the plaintiffs had yet to suffer from cancer, they sued Firestone, seeking damages for their increased risk of cancer as well as the fear brought on by that risk. After the trial court awarded the plaintiffs $800,000, the California Supreme Court reversed, concluding *inter alia* that despite the apparent reasonableness of the plaintiffs' fears, public policy necessitated application of a higher standard to their emotional distress claims. *See id.* 25 Cal.Rptr.2d at 566, 863 P.2d at 811. These policy reasons were primarily based upon the fact that "all of us are potential fear of cancer patients" due to constant exposure to carcinogens, and allowing each member of this "potentially unrestricted plaintiff class" recovery for fear of cancer would have a "staggering" impact on liability insurance. *Id.* at 567–68, 863 P.2d at 812–13. Furthermore, the *Potter* court explained that a more likely than not limitation establishes "a sufficiently definite and predictable threshold for recovery to permit consistent application from case to case," and thereby avoids inconsistent jury verdicts. *Id.* at 568–69, 863 P.2d at 813–14. Consequently, the *Potter* court held that

> in the absence of a present physical injury or illness, damages for fear of cancer may be recovered only if the plaintiff pleads and proves that (1) as a result of the defendant's negligent breach of a duty owed to the plaintiff, the plaintiff is exposed to a toxic substance which threatens cancer; and (2) the plaintiff's fear stems from a knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that the plaintiff will develop the cancer in the future due to the toxic exposure.

*Id.* at 571, 863 P.2d at 816.

■ In our view, the more probable than not standard articulated in *Potter* is not appropriate in cases where the plaintiff's fear of cancer results from a delayed medical diagnosis. Contrary to toxic exposure cases, where the plaintiff has yet to experience the onset of cancer, fear of cancer cases in the medical setting usually involve a negligent misdiagnosis of a patient's existing cancer.

---

**9.** *Potter* forms the basis of Judge Rothenberg's dissent to that part of the court of appeals' decision addressing Boryla's fear of cancer claim.

*See Boryla,* 937 P.2d at 820–21 (Rothenberg, J., dissenting).

In cases where the plaintiff demonstrates that her cancerous condition physically worsened as a result of the delayed diagnosis, the plaintiff has demonstrated a sufficient physical injury to permit the recovery of emotional distress damages. *See MacMahon*, 39 Colo. App. at 356, 568 P.2d at 91; *Potter*, 25 Cal. Rptr.2d at 571, 863 P.2d at 816; *Evers*, 471 A.2d at 411–12. Thus, the usual reservations courts have concerning jury speculation and conjecture in cases involving plaintiffs seeking purely emotional damages are inapplicable in a case such as Boryla's. *See Towns v. Anderson*, 195 Colo. 517, 519, 579 P.2d 1163, 1164 (1978).

■ Additionally, the sweeping policy rationales relevant in a toxic tort case are not present here because the class of potential plaintiffs in a medical malpractice case is "clearly limited" to the parties in dispute. *Potter*, 25 Cal.Rptr.2d at 568, 863 P.2d at 813. Furthermore, the court of appeals correctly notes that

> [a]s to the contention that failure to require a more probable than not standard will promote inconsistent jury verdicts, we note that any action submitted to a jury is susceptible to this criticism. Taken to its logical end, the criticism is of juries per se.

*Boryla*, 937 P.2d at 819. For these reasons, traditional negligence principles which focus on proximate cause as well as the reasonableness of the plaintiff's fear are sufficient to evaluate fear of cancer claims in medical malpractice cases.

### IV.

The judgment of the court of appeals is reversed and the case is remanded for consideration of the remaining issues raised on appeal.

SCOTT and KOURLIS, JJ., do not participate.

