**Christa G. BOHRER, Petitioner,**

v.

**Daniel DeHART, Respondent.**

**No. 97SC317.**

Supreme Court of Colorado,
En Banc.

June 22, 1998.

Rehearing Denied July 27, 1998.

Seelen & Associates, Joyce Seelen, Denver, for Petitioner.

Quigley, Hibschweiler, Johnson & Ritter, LLC, James D. Johnson, Sheila E. Barthel, Denver, for Respondent.

Justice HOBBS delivered the Opinion of the Court.

Christa G. Bohrer (Bohrer) appeals from the court of appeals decision in *Bohrer v. DeHart*, 944 P.2d 633 (Colo.App.1997) (*Bohrer II*), reinstating that court's prior decision in *Bohrer v. DeHart*, 943 P.2d 1220 (Colo. App.1996) (*Bohrer I*).

Bohrer had sued Daniel DeHart (DeHart), the First Methodist Church of Greeley (Church), and the Rocky Mountain Conference of the United Methodist Church (Conference) on multiple claims arising from DeHart's improper counseling and sexual relationship with Bohrer while DeHart was a youth minister for the church. We granted certiorari in *Bohrer I*, vacated the court of appeals judgment, and remanded the case to that court for reconsideration in light of our decision in *Bear Valley Church of Christ v. DeBose*, 928 P.2d 1315 (Colo.1996). In *Bohrer II*, the court of appeals determined that its reasoning in *Bohrer I* remained sound even after *Bear Valley* and reinstated its judgment. Bohrer, DeHart, the Church, and the Conference all sought

certiorari review from the court of appeals decision in *Bohrer II.*[1]

We now reverse the judgment of the court of appeals and reinstate the jury's verdict against DeHart.

## I.

Bohrer was an active member of the Church when she began counseling with De-Hart in the summer of 1983. She was 12; DeHart was 28. Bohrer had problems at home. After initially discussing these problems with DeHart's wife, Bohrer began regular counseling sessions with DeHart, a youth minister for the Church and the Conference. As counseling went on, DeHart began to confide in Bohrer regarding his marital problems. He also undertook to isolate her from others in the community, urging her not to seek advice from others, saying that many of the people close to her were untrustworthy.

The relationship gradually developed into one involving physical touching. When Bohrer was fourteen, DeHart engaged her in sexual intercourse. The sexual activity ended when Bohrer was eighteen and began her college education.

Bohrer sought counseling while in college and eventually confronted DeHart, the Church, and the Conference regarding De-Hart's abuse of her. The Conference approached DeHart about the allegations and accepted, "under complaint," DeHart's resignation of his ministerial credentials. The Conference decided that no further action or investigation was necessary.

Bohrer subsequently filed a criminal complaint against DeHart. The criminal case resulted in a plea bargain and a sentence which included work release on one charge, probation on another, and no immediate restitution. Bohrer then filed this civil suit in the District Court for the City and County of Denver, alleging outrageous conduct and breach of fiduciary duty against DeHart and negligent hiring and supervision, vicarious

liability, breach of fiduciary duty, and outrageous conduct against the Church and the Conference. Bohrer also sought punitive damages against all three defendants. De-Hart claimed at trial that the sexual relationship was consensual and commenced only after the pastoral counseling ended.

At the close of trial, the trial judge instructed the jury several times not to award duplicative damages to Bohrer in the event of a finding of liability. For example, Instruction No. 39 states, "If you find for Plaintiff on more than one claim for relief, you may award her damages only once for the same injuries, damages and losses." Instruction No. 46 notified the jury that, "If you find in favor of the plaintiff against two or three defendants, you shall divide the total amount of damages incurred by the plaintiff between the culpable defendants in the proportionate amount which you determine was caused by each defendant." The district court provided special verdict forms to the jury for each defendant; these forms also admonished the jurors not to "duplicate any damages you awarded" against the other defendants.

The court also instructed the jury regarding the duration of involvement of each of the defendants under each of the potential theories for recovery. DeHart's counseling of Bohrer commenced in 1983. The court told the jury that conduct after February 22, 1991, the date that DeHart surrendered his credentials to the Conference, could not be used against the Conference on the negligent hiring or supervision claim. Regarding the fiduciary duty claim, the court instructed the jury that there was no fiduciary relationship between the Conference and Bohrer before January 24, 1991, the date that Bohrer complained to the Conference about DeHart's conduct. Finally, the court instructed the jury that the Church's duty to supervise DeHart ended in August of 1985, when De-Hart ceased working as a minister for the Church.

1. While the petitions and cross-petition for certiorari were pending, the Church and the Conference settled with Bohrer. DeHart and Bohrer are the only remaining parties. We denied De-Hart's petition for certiorari but granted Bohrer's cross-petition to determine "whether the

court of appeals erred in reversing damage awards as they relate to DeHart based on perceived inadequacies of verdict forms where those perceived inadequacies were the subject of jury instructions."

The jury found for Bohrer and against DeHart on the breach of fiduciary duty and outrageous conduct claims and for Bohrer and against the Church and the Conference on the negligent hiring and supervision and breach of fiduciary duty claims. The jury awarded Bohrer $375,000 in compensatory damages according to the following allocation: (1) $187,500 against DeHart, (2) $150,000 against the Conference, and (3) $37,500 against the Church. The jury also awarded Bohrer punitive damages of $187,500 against DeHart and $150,000 against the Conference, but it did not award punitive damages against the Church.

On appeal, the court of appeals affirmed in part, reversed in part, and remanded for a new trial on damages. The court of appeals affirmed the jury's determination of DeHart's liability for breach of fiduciary duty, outrageous conduct, and punitive damages. It also affirmed the judgment regarding the Conference's liability for negligent hiring and supervision and the award of all costs jointly and severally against all defendants.[2] The court of appeals reversed the judgments as to the Conference's liability for breach of fiduciary duty and for punitive damages. It also reversed the compensatory damage awards against DeHart and the Conference and the punitive damage award against DeHart. The court then remanded the case for a new trial "to determine the allocation of fault among defendants; the amount of compensatory damages to be awarded against DeHart and the Conference; the amount of punitive damages to be awarded against DeHart; and whether to award punitive damages against the Conference and, if so, the amount of that award." *Bohrer I*, 943 P.2d at 1223.

We granted certiorari in *Bohrer I*, vacated the judgment of the court of appeals, and remanded the case back to that court for reconsideration in light of our opinion in *Bear Valley*. Upon reconsideration, the court of appeals determined that the *Bear Valley* opinion, although reversing another division of the court of appeals, had not

criticized any of the reasoning relied upon by the *Bohrer I* court. *See Bohrer II*, 944 P.2d at 634. The court of appeals accordingly affirmed its prior opinion and remanded the case to the district court for a new trial on damages.

The parties then sought certiorari in *Bohrer II*. While certiorari was pending, the Conference and the Church settled with Bohrer. DeHart is the only remaining defendant; hence, the only remaining issue is the court of appeals decision to remand the case for a new trial to determine the amount of compensatory damages for which DeHart is liable based on the allocation of fault amongst the parties and the amount of punitive damages for which DeHart is liable.

## II.

We hold that the district court's failure to provide the jury with computational verdict forms in compliance with section 13–21–111.5, 5 C.R.S. (1997), was error. However, the error was harmless because the district court properly instructed the jury on apportionment of damages, and the verdict forms do not demonstrate that the jury ignored the instructions. Accordingly, we reverse the court of appeals and reinstate the jury verdict against DeHart.

### A.

#### *Section 13–21–111.5 And Special Verdict Forms*

In tort cases involving multiple defendants, the General Assembly has determined that "no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant." § 13–21–111.5(1), 5 C.R.S. (1997). This legislative enactment "rectifies the inequity" caused by the common law rule of joint and several liability whereby any one responsible party could have been liable for all losses which the plaintiff incurred. *Moody v. A.G. Edwards & Sons, Inc.*, 847 P.2d 215, 217 (Colo.App. 1992).

---

**2.** The Church did not appeal the judgment against it but only appealed the finding of joint

and several liability for costs.

Section 13–21–111.5(2) sets forth a jury verdict procedure for pro rata liability cases:

(2) *The jury shall return a special verdict,* or, in the absence of a jury, the court shall make special findings *determining the percentage of negligence or fault attributable to each of the parties* and any persons not parties to the action of whom notice has been given pursuant to paragraph (b) of subsection (3) of this section to whom some negligence or fault is found *and determining the total amount of damages sustained by each claimant.* The entry of judgment shall be made by the court based on the special findings, and no general verdict shall be returned by the jury.

(Emphasis added.) This type of special verdict "will tend to ensure" that pro rata liability "achieves its basic goal of apportioning damages on the basis of fault." Victor E. Schwartz, *Comparative Negligence* § 17–4(h) (3d ed. 1994 & Supp.1997) (discussing the use of essentially similar special verdict forms in comparative negligence cases). This is so because requiring the jury to specifically determine percentages of liability and a total amount of damages allows a court to determine whether or not pro rata liability is actually and accurately being applied. Special verdict forms focus the jury on the essential issues attendant to a finding of liability—total damages and the relative fault of the parties.

DeHart argues that because the verdict forms did not require the jury to specifically find the total amount of Bohrer's damages, the exact percentage of fault of each party, and a separate finding as to damages caused only by the Conference, the forms did not comply with the statute and the jury may have awarded duplicative damages. Bohrer counters that the jury complied with section 13–21–111.5 by awarding damages against each defendant according to fault.[3]

The verdict forms in this case did not strictly comply with section 13–21–111.5.[4] That provision contemplates a division of labor between judge and jury whereby the jury determines percentages of fault and total damages and the judge engages in the mathematical computations by dividing the total award according to the fault allocated to each defendant. However, under the facts and circumstances of this case, we conclude that the error was harmless because, as in *Bear Valley,* the trial court properly and explicitly instructed the jury, and we presume the jury followed these instructions. *See Bear Valley,* 928 P.2d at 1331.

## B.

### *Harmless Error*

Under our Colorado rules, we do not set aside a jury verdict unless the court's error is inconsistent with substantial justice:

[N]o error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

C.R.C.P. 61.

We have a duty to review the jury instructions, verdict forms, and evidence in

---

**3.** Both parties also debate the merits of our opinion in *Bear Valley Church of Christ v. DeBose,* 928 P.2d 1315 (Colo.1996), and its applicability or inapplicability to this case. In *Bear Valley,* we addressed a case involving similar facts, including multiple defendants and multiple claims for relief. Although we decided the jury instruction/verdict form issue by concluding that the defendants had failed to preserve it for appeal by making a contemporaneous objection, we briefly touched on the merits in order to demonstrate that the case was not one of the "rare" instances where appellate review is warranted despite the failure to preserve an issue for appeal.

We noted that the trial court instructed the jury several times not to duplicate damages awarded under a different theory for recovery and that juries are presumed to follow instructions. *See Bear Valley,* 928 P.2d at 1331. In light of these "explicit jury instructions," we determined that making an exception to the contemporaneous objection rule for purposes of appellate review was unnecessary. *Id.*

**4.** The verdict form used by the jury in recording its verdict against DeHart is attached to this opinion as Appendix A.

order to determine "whether there is competent evidence from which the jury logically could have reached its verdicts." *Hock v. New York Life Ins. Co.*, 876 P.2d 1242, 1259 (Colo.1994); *see also Boryla v. Pash*, 960 P.2d 123, 128 (Colo.1998). We defer to jury verdicts when jurors have been properly instructed and the record contains evidence to support the jury's findings. *See Boryla*, 960 P.2d at 128; *Hock*, 876 P.2d at 1259. In *Hock*, the verdict forms would have allowed the jury to find bad faith breach of contract even if the jury found that recission of the contract had been proven. *See id.* The insurance company argued that this defect created reversible error by inviting inconsistent verdicts. We determined, however, that although the verdict forms invited inconsistent verdicts on the part of the jury, it was clear from the record that this did not occur. The error in the forms was, therefore, harmless. *See id.*

Although the case currently before us involves noncompliance with the technical requirements of section 13–21–111.5, we find the "competent evidence" standard useful for determining whether the error in this case was harmless. Similarly, we look to the court's instructions and the jury's actual verdicts to determine whether any inconsistency in the damage awards exists.

Here, the court specifically instructed the jury to "divide the total amount of damages incurred by the plaintiff between the culpable defendants in the proportionate amount which you determine was caused by each defendant." Instruction No. 46. The trial judge also instructed the jury that it could award damages only once if it found for Bohrer on more than one claim for relief. We presume the jury followed these instructions and that its verdict apportioned damages according to fault.

The Illinois Appellate Court has addressed analogous circumstances. *See Johnson v. O'Neal*, 216 Ill.App.3d 975, 159 Ill.Dec. 817, 576 N.E.2d 486 (1991). In *Johnson*, the trial court had failed to provide the jury with a computational verdict form in a case where the defendants alleged comparative negligence on the part of the plaintiff. *See Johnson*, 159 Ill.Dec. 817, 576 N.E.2d at 493. The plaintiffs appealed the jury verdict in their favor alleging, in part, that the damage award was "manifestly inadequate." *Id.* 159 Ill.Dec. 817, 576 N.E.2d at 492.

The *Johnson* court determined that, while computational verdict forms should be used "in all jury cases where comparative fault is an issue," the failure to do so does not necessarily require reversal of the jury verdicts or an adjustment of the damage award. *Id.* 159 Ill.Dec. 817, 576 N.E.2d at 494. The court was able to determine, after reviewing the damage award and the undisputed damage claims of the plaintiff, that the jury award allocated 72.6% of the fault to the plaintiff.[5] *Id.* 159 Ill.Dec. 817, 576 N.E.2d at 493.

Comparative fault, addressed by the *Johnson* court, and pro rata liability, the issue before us, serve similar objectives. *Compare* § 13–21–111.5 (allocating damages according to fault of defendant) *with Lawrence v. Florida East Coast Ry. Co.*, 346 So.2d 1012, 1016 (Fla.1977) (noting that special verdict forms "will serve to insure that the comparative negligence law achieves its desired goal of apportioning damages on the basis of fault"). As did the Illinois court in *Johnson*, we can easily derive from the sum of the individual damage awards the implicit percentages of liability which the jury allocated to each defendant here: (1) it found DeHart to be liable for 50% of Bohrer's total damage award, (2) the Conference to be liable for 40% of the total award, and (3) the Church to be liable for 10% of the total award.

The defense presented the district court with a voluminous set of proposed verdict forms with accompanying instructions. The district court, exercising its sound discretion, determined that the forms which defendants had tendered were too long and complex, and it chose instead to submit separate verdict forms for each of the three defendants, set A

---

5. From its review of the record, the *Johnson* court determined that the "manifest weight of the evidence" did not support the percentage finding of the jury. *Johnson*, 159 Ill.Dec. 817, 576 N.E.2d at 494. The court would have ordered a new trial as to the comparative fault issue; however, the plaintiffs failed to seek this relief in their notice of appeal and the verdicts were affirmed. *Id.* 159 Ill.Dec. 817, 576 N.E.2d at 495.

for a finding of no liability and set B for a finding of liability and damages.

The verdict forms required the jury to answer questions regarding the liability of the particular defendant, and, if liable, to then enter damages against that defendant. The district court instructed the jury not to duplicate damages awarded against other defendants or under other theories of relief. In addition, the directions stated in Question 10 of each of the three set B verdict forms required the jury to record the amount of damages awarded against the particular defendant and cautioned the jury not to duplicate damages already awarded against one of the other defendants. We presume the jury followed those instructions and computed damage amounts on the verdict forms accordingly. *See Bear Valley*, 928 P.2d at 1331.

Examination of the entries on each of the three special verdict forms reveals that the jury did not randomly assign damage amounts; rather, following the court's instructions, it considered the different claims for relief and the varying degrees of culpability of the defendants. We conclude that the jury did not "jump to a conclusion on a 'gut reaction.'" *Lawrence*, 346 So.2d at 1016 (citations omitted).

There is competent evidence in the record, *see Hock*, 876 P.2d at 1259, supporting the jury's evident 50–40–10 percentage split. The record supports the jury's conclusions that: (1) DeHart was the principal tortfeasor and the most at fault; (2) the Conference was the next most culpable, given its long-term relationship with DeHart which continued throughout the period of DeHart's abusive relationship with Bohrer and given the Conference's inattentive and inadequate response to Bohrer's complaint; and (3) the Church was the least involved since its duty to supervise DeHart ended in 1985 when DeHart ceased his association with the Church, only two years into DeHart's six-year relationship with Bohrer.

Remand for a new trial on damages is not required here in the interest of substantial justice.[6] *See* C.R.C.P. 61; *Hock*, 876 P.2d at 1259.

### III.

Accordingly, we reverse the court of appeals judgment which required a new trial on damages. We remand this case to that court with directions to reinstate the jury's verdict and the judgment of the district court against DeHart.

VOLLACK, C.J., concurs in part and dissents in part.

### *Appendix A*

DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO
Case No. 93 CV 0434, Courtroom 6

---

**SPECIAL VERDICT FORM B (DeHart)**

---

CHRISTA G. BOHRER,

Plaintiff,

v.

DANIEL DEHART, ROCKY MOUNTAIN CONFERENCE OF THE UNITED METHODIST CHURCH, a non-profit Colorado corporation, and FIRST UNITED METHODIST CHURCH OF GREELEY, a non-profit Colorado corporation,

Defendants.

---

If you found defendant DeHart at fault, which fault caused injuries or losses to the plaintiff, then answer the following questions, and sign Special Verdict Form B (DeHart). If you found for DeHart on all claims, then sign Special Verdict Form A (DeHart). If you found that plaintiff did incur damages and that DeHart's fault was a cause of injury, answer the following questions:

---

**6.** In the criminal context, we decided in *People v. Shinaut*, 940 P.2d 380, 383–84 (Colo.1997), that non-compliance with the specific procedures of a statute governing collection of evidence did not require suppression of the evidence. We similar-ly refuse here to require reversal of a jury verdict, to which our justice system accords great deference, for technical noncompliance with a procedural statute.

**QUESTION NO. 1.** Did the plaintiff, Christa Bohrer, incur damages.

    **ANSWER:** (yes or no)          __YES__

**QUESTION NO. 2.** Did a fiduciary relationship exist between plaintiff and defendant DeHart?

    **ANSWER:** (yes or no)          __YES__

**QUESTION NO. 3.** If your answer to question 2 was "yes," did defendant DeHart breach a fiduciary duty relationship to Christa Bohrer?

    **ANSWER:** (yes or no)          __YES__

**QUESTION NO. 4.** If your answer to questions 2 and 3 was "yes," was the breach of fiduciary relationship a cause of any injuries or damages claimed by plaintiff?

    **ANSWER:** (yes or no)          __YES__

[QUESTIONS NO. 5 AND 6 NOT PRESENTED TO JURY]

**QUESTION NO. 7.** Did defendant Daniel DeHart engage in extreme or outrageous conduct?

    **ANSWER:** (yes or no)          __YES__

**QUESTION NO. 8.** Did defendant Daniel DeHart engage in the conduct recklessly or with the intent of causing the plaintiff severe emotional distress?

    **ANSWER:** (yes or no)          __YES__

**QUESTION NO. 9.** If you answered question 7 and 8 "yes," was the extreme and outrageous conduct a cause of any injuries or damages claimed by plaintiff?

    **ANSWER:** (yes or no)          __YES__

**QUESTION NO. 10.** State the total amount of the plaintiff Christa Bohrer's damages caused by any breach of fiduciary duty or negligence or outrageous conduct of Daniel DeHart. Do not duplicate ant [sic] damages you awarded in answer to Special Verdict form B (Conference) and Special Verdict Form B (Greeley Church).

    **ANSWER:** A.  PAST DAMAGES

| | |
|---|---|
| Past Economic Damages | $17,000 |
| Past Non–Economic Damages | $50,000 |

                B.  FUTURE DAMAGES

| | |
|---|---|
| Future Economic Damages | $93,500 |
| Future Non—Economic Damages | $27,000 |

**QUESTION NO. 11.** Do you find beyond a reasonable doubt that the actions of defendant DeHart were attended by the circumstances of willful and wanton conduct?

    **ANSWER:** (yes or no)          __YES__

QUESTION NO. 12. If your answer to question 11 is "yes," what amount of exemplary damages, not to exceed that amount awarded against defendant Daniel DeHart as actual damages, do you award?

ANSWER:                                        $187,500

_____

_____        Foreman or Forewoman

_____        _____

[This verdict was signed by all six jurors.]

---

Chief Justice VOLLACK concurring in part and dissenting in part:

The majority holds that the trial court erred in not providing the jury with computational verdict forms as required by section 13–21–111.5, 5 C.R.S. (1997). I agree with this conclusion. The majority also holds that this error was harmless because an allocation of liability by percentage can be easily derived from the sum of the individual damage awards. I disagree. In my view, this failure to comply with an explicit statutory provision is not harmless. Accordingly, I concur in part and dissent in part.

Section 13–21–111.5 provides in pertinent part as follows:

(1) In an action brought as a result of ... an injury to person ..., no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant....

(2) The jury shall return a special verdict ... determining the percentage of negligence or fault attributable to each of the parties ... and determining the total amount of damages sustained by each claimant. The entry of judgment shall be made by the court based on the special findings, and no general verdict shall be returned by the jury.

When the jury in this case failed to determine the percentage of fault attributable to each of the defendants, it rendered a general verdict expressly prohibited by section 13–21–111.5(2). Although the majority concludes in its harmless error analysis that percentages of fault may be easily derived from the jury's damage award, I agree with our court of appeals that "we cannot assume that the amounts awarded by the jury against the separate defendants are for separate injuries or that they are the equivalent of an apportionment based on fault." *Bohrer v. DeHart*, 943 P.2d 1220, 1230–31 (Colo.App. 1996). Furthermore, I believe that a clear violation of a legislative mandate which casts doubt on the integrity of the proceedings is not harmless. *See Avery v. Wadlington*, 186 Colo. 158, 161, 526 P.2d 295, 297 (1974).[1] For these reasons, I would affirm the court of appeals. Accordingly, I concur in part and dissent in part.

---

1. In *Avery*, we explained that

the legislature, when it enacted the comparative negligence statute, intended to establish a system in negligence cases which divides the responsibility for a fair and good result between the jury and the judge. Such a system enhances the chance of a pure verdict on material facts alone. It mandates in precise language that the jury is the finder of facts and as such simply answers questions posed to it in the special verdict form.

*Avery*, 186 at 161, 526 P.2d at 297.